UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. BRENT BOERGER, | ) | **FILED UNDER SEAL** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2:11-cv-00125-wks |
| | ) | |
| APPLIED RESEARCH ASSOCIATES INC., | ) | |
| | ) | |
| Defendants. | ) | |

**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice on behalf of the Department of the Army (collectively, "the United States"), Applied Research Associates, Inc., and Brent Boerger ("the Relator"), through their authorized representatives.

**Recitals**

A.    Applied Research Associates, Inc. (ARA) is a corporation headquartered in Albuquerque, New Mexico, with offices and divisions located throughout the United States, including two divisions located in Vermont, the New England Division (NED) and Vertek Division.  Among other things, NED and Vertek are engaged in defense contracting work, including work performed under contracts between ARA and the Army.

B.    On April 4, 2011, the Relator filed a *qui tam* action in the U.S. District Court for the District of Massachusetts captioned *United States ex rel. Brent Boerger v. Applied Research Associates, Inc.*, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b)

("the Civil Action"). The Civil Action was subsequently transferred to the U.S. District Court

for the District of Vermont. The Relator alleges in his complaint that ARA fraudulently billed

labor and materials to a U.S. Army Night Vision and Electronic Sensors Directorate (NVESD)

contract, No. W909MY-07-C-0028, informally known as "the NEMESIS project." The Relator

alleges that certain labor and materials billed under the NEMESIS contract were outside the

contract scope of work and that such billing was undertaken to avoid use of other sources of

corporate monies, such as corporate funding for overhead. The Relator also alleges that ARA

fraudulently billed other government contracts in a similar manner. Further, he alleges that ARA

retaliated against him for making complaints to ARA officials about the improper billing.

      C.     The United States contends that it has certain federal and state law civil claims

against ARA arising from billing under the NEMESIS contract during the time period October

2007 through June 2009. In particular, the United States contends that during that time period

labor, materials and other related direct or indirect costs provided by NED and/or Vertek for

work performed on the following ARA projects were fraudulently billed to the NEMESIS

contract: (1) the Lightweight Reconnaissance Vehicle project; (2) the Towhawk project; (3) the

Cavehawk project; (4) the RADAS project; and (5) the Nighthawk project. The conduct

described in this paragraph is referred to herein as the "Covered Conduct."

      D.     ARA does not admit that the Covered Conduct constitutes fraudulent billing

to the NEMESIS contract nor that it otherwise violated the False Claims Act.

      E.     This settlement is not a concession of liability by ARA, nor a concession by the

United States that its claims are not well founded.

2

F.      The Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the parties to this Settlement Agreement agree and covenant as follows:

## Terms and Conditions

1.      ARA shall pay to the United States One Million and One Hundred Thousand Dollars ($1,100,000.00) ("Settlement Amount") plus interest on the Settlement Amount calculated in the manner set forth in 28 U.S.C. § 1961(a)-(b) for the period beginning September 24, 2012 until the Settlement Amount is paid in full.  Payment shall be made by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the District of Vermont.

2.      Conditioned upon the United States receiving the Settlement Amount from ARA and as soon as feasible after receipt, the United States shall pay Two Hundred and Twenty Thousand Dollars ($220,000.00) to the Relator by electronic funds transfer.  To effect this transfer, the Relator shall provide his full name,  tax identification number and full mailing address to the United States Attorney's Office in the District of Vermont.

3.      ARA shall pay to Relator's counsel, Jeffrey A. Newman, Esq., the amount of Sixty Four Thousand and Two Hundred and Thirty Four U.S. dollars ($64,234.00) ("Relator's Attorney Fees and Expenses"), for attorney's fees, expenses and costs incurred in connection with the above-captioned action.  Such payment shall be made by wire transfer to an address to

3

be provided by Jeffrey Newman.

    4.    Subject to the exceptions in Paragraph 6, (concerning excluded claims) below, and conditioned upon ARA's full payment of the Settlement Amount, the United States releases ARA and its officers, directors, employees, attorneys and agents from any civil monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729 - 3733, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801 - 3812, the Contract Disputes Act, 41 U.S.C. §§ 7101- 7109, or common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

    5.    Subject to the exceptions in Paragraph 6 below, and conditioned upon ARA's full payment of the Settlement Amount and the Relator's Attorney's Fees and Expenses, the Relator, for himself and his heirs, successors, attorneys, agents, and assigns, releases ARA and its officers, directors, employees, attorneys and agents from any civil monetary claim the relator has on behalf of the United States for the covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729 - 3733, as well as all other allegations contained in Relator's Complaint. The Relator states that he is not asserting and specifically waives any rights to (i) any retaliation claim, and (ii) any claims regarding ARA's fraudulent billing to "other government contracts in a similar manner," which might exist and which claim was set for in the original Complaint of this action. It is understood by both Relator and ARA that the moneys paid in relation to this case are not for any retaliation claim on the part of the Relator against ARA.

    6.    Notwithstanding the releases given in paragraphs 4 and 5 of this Settlement Agreement, or any other terms herein, the following claims of the United States are specifically reserved and are not released:

4

a.    Any liability arising under title 26, U.S. Code (Internal Revenue Code);

b.    Any criminal liability;

c.    Any administrative liability, including suspension and debarment;

d.    any liability to the United States or its agencies for any conduct other than the Covered Conduct;

e.    Any liability based on obligations created by this Agreement;

f.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g.    Any liability for failure to deliver goods or services due; and

h.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.    The Relator and his heirs, successors, attorneys, agents, and assigns agree and confirm that this Settlement Agreement is fair, adequate and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B), and further agree they shall not object to this Settlement Agreement. Conditioned upon the Relator's receipt of the payment described in Paragraph 2, Relator, his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Settlement Agreement and/or the Civil Action.

8.      The Relator, for himself and his heirs, successors, attorneys, agents, and assigns releases ARA and its officers, agents, and employees from any liability to the Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

9.      ARA waives and shall not assert any defenses that ARA may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Settlement Agreement bars a remedy sought in such criminal prosecution or administrative action.  Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

10.     ARA fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that ARA has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

11.     Concerning Unallowable Costs, ARA agrees to the following:

a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of ARA, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by the Settlement Agreement;

6

    (2)    the United States' audit(s) and civil investigations of the matters

covered by this Settlement Agreement;

    (3)    ARA's investigation, defense, and corrective actions undertaken in

response to the United States' audit(s) and civil investigation in

connection with the matters covered by the Settlement Agreement

(including attorney's fees);

    (4)    the negotiation and performance of this Settlement Agreement;

    (5)    the payment ARA makes to the United States pursuant to this

Settlement Agreement and any payments ARA makes to the

Relator, including costs and attorney's fees,

are unallowable costs for government contracting purposes

(hereinafter referred to as "Unallowable Costs").

    b.    Future Treatment of Unallowable Costs: Unallowable Costs shall be

separately determined and accounted for by ARA, and ARA shall not charge such Unallowable

Costs directly or indirectly to any contracts with the United States.

    c.    Treatment of Unallowable Costs Previously Submitted for Payment: ARA

further agrees that within 90 days of the Effective Date of this Settlement Agreement it shall

identify and repay, by adjustment to future claims for payment or otherwise, any Unallowable

Costs included in payments previously sought by ARA or any of its subsidiaries or affiliates from

the United States. ARA agrees that the United States, at a minimum, shall be entitled to recoup

from ARA any overpayment plus applicable interest and penalties as a result of the inclusion of

such Unallowable Costs on previously-submitted requests for payment. The United States,

7

including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine ARA's books and records and to disagree with any calculations submitted by ARA or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by ARA, or the effect of any such Unallowable Costs on the amount of such payments.

12.     This Settlement Agreement is for the benefit of the parties to this Settlement Agreement only.

13.     Within seven days of receipt by the United States Attorney's Office of the fully executed Settlement Agreement, the Relator and the United States shall file in the Civil Action a Stipulation of Dismissal.

14.     Except as set forth in Paragraph 3, above, concerning Relator's Attorney's Fees and Expenses, each party to the Settlement Agreement shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Settlement Agreement.

15.     Each party and signatory to this Settlement Agreement represents that it freely and voluntarily enters into this Settlement Agreement without any degree of duress or compulsion.

16.     This Settlement Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Settlement Agreement is the United States District Court for the District of Vermont. For purposes of construing this Settlement Agreement, this Settlement Agreement shall be deemed to have been drafted by all parties to this Settlement Agreement and shall not, therefore, be construed against any party for that reason in any subsequent dispute.

17.    This Settlement Agreement constitutes the complete settlement agreement between the parties.  This Settlement Agreement may not be amended except by written consent of the parties.

18.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19.    This Settlement Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Settlement Agreement.

20.    This Settlement Agreement is binding on ARA's successors, transferees, heirs, and assigns.

21.    This Settlement Agreement is binding on the Relator's successors, transferees, heirs, and assigns.

22.    All parties consent to the United States' disclosure of this Settlement Agreement, and information about this Agreement, to the public.

23.    This Settlement Agreement is effective on the date of the signature of the last signatory to the Settlement Agreement.  Facsimiles and electronic copies of signatures shall constitute acceptable, binding signatures for purposes of this Settlement Agreement.


THE UNITED STATES OF AMERICA

DATED: _9./2./2_    BY: _____
/CAROL L. SHEA
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Burlington, Vermont

9

APPLIED RESEARCH ASSOCIATES, INC.

DATED: 9/15/12          BY: _____

                       ROBERT SUES
                       President and CEO
                       Applied Research Associates


DATED 9/14/12          BY: _____

                       E. LESLIE HOFFMAN, ESQ.
                       Jackson Kelly PLLC
                       Martinsburg, West Virginia 25402


BRENT BOERGER


DATED: _____      BY: _____

                       BRENT BOERGER


DATED: _____      BY: _____

                       JEFFREY NEWMAN, ESQ.
                       Law Offices of Jeffrey Newman and Associates
                       Boston, MA 02120

<u>APPLIED RESEARCH ASSOCIATES, INC.</u>

DATED: _____        BY: _____

ROBERT SUES
President and CEO
Applied Research Associates


DATED _____        BY: _____

E. LESLIE HOFFMAN, ESQ.
Jackson Kelly PLLC
Martinsburg, West Virginia 25402


<u>BRENT BOERGER</u>

DATED: 9/12/2012        BY: _____

BRENT BOERGER


DATED: _____        BY: _____

JEFFREY NEWMAN, ESQ.
Law Offices of Jeffrey Newman and Associates
Boston, MA 02120

<u>APPLIED RESEARCH ASSOCIATES, INC.</u>

DATED: _____     BY: _____
                          ROBERT SUES
                          President and CEO
                          Applied Research Associates

DATED _____      BY: _____
                          E. LESLIE HOFFMAN, ESQ.
                          Jackson Kelly PLLC
                          Martinsburg, West Virginia 25402

<u>BRENT BOERGER</u>

DATED: _____     BY: _____
                          BRENT BOERGER

DATED: 9/12/12        BY: _____
                          JEFFREY NEWMAN, ESQ.
                          Law Offices of Jeffrey Newman and Associates
                          Boston, MA 02120

10